**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|                              |   |                          |
| :--------------------------- | - | :----------------------- |
|                              | : |                          |
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 20-260-01**  |
|                              | : |                          |
| **v.**                       | : |                          |
|                              | : |                          |
| **SHAQUAN BROWN**            | : |                          |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2025, upon consideration of the

defendant Shaquan Brown's Motion for Judgement of Acquittal it is hereby ORDERED that the

defendant's motion is DENIED.

**BY THE COURT:**

_____
**HONORABLE CYNTHIA M. RUFE**
**Senior Judge, United States District Court**

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 20-260-01** |
| | : | |
| **v.** | : | |
| | : | |
| **SHAQUAN BROWN** | : | |

<u>**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL**</u>

The United States of America, by its attorneys, David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Anthony J. Carissimi and J. Jeanette Kang, Assistant United States Attorneys for the district, submits the following response in opposition to the defendant's Motion for Judgment of Acquittal.

## I.     <u>FACTS & PROCEDURAL BACKGROUND</u>

On August 27, 2020, a grand jury sitting in the Eastern District of Pennsylvania returned an indictment charging defendant Shaquan Brown with one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). On October 7, 2021, the federal grand jury returned a superseding indictment as to the defendant, charging him with two counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), two counts of using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c), and one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g).

Then, on February 3, 2022, the federal grand jury returned a second superseding indictment charging the defendant, as well as co-defendants Tyreek Byrd and Sahir McCorkle, with one count of conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count One). Count One alleged that these three individuals conspired with Willie Singletary— identified as "Person #1"— to rob the Happy Laundromat, a drug dealer named D.W., the Fiji

Nails and Spa Salon, and a real estate business owner named A.H. The defendants were also charged in substantive counts as follows: Hobbs Act robbery and using a firearm during and in relation to a crime of violence, and aiding and abetting, relating to the robbery of Happy Laundromat (Counts Two and Three – defendants Brown and McCorkle); attempted Hobbs Act robbery and using a firearm during and in relation to a crime of violence, and aiding and abetting, relating to the attempted robbery of D.W. (Counts Four and Five – defendants Brown, Byrd and McCorkle); Hobbs Act robbery and using a firearm during and in relation to a crime of violence, and aiding and abetting, relating to the robbery of Fiji Nails & Spa (Counts Six and Seven – defendants Brown, Byrd and McCorkle); and attempted Hobbs Act robbery, using a firearm during and in relation to a crime of violence, aiding and abetting, and possession of a firearm by a felon, relating to the attempted robbery of A.H. (Counts Eight, Nine and Ten– defendant Brown). The government subsequently moved to dismiss Counts Five and Nine, charging the defendant with violating 18 U.S.C. § 924(c) in connection with attempted robberies.

Following a series of delays and pretrial litigation, the defendant proceeded to trial on April 4, 2024.  On April 15, 2024, the jury convicted the defendants on Count 1 (conspiracy to commit Hobbs Act Robbery), Count 6 (robbery of the Fiji Nails and Spa Salon), Count 7 (using, carrying, and brandishing a firearm during and in relation to the robbery of the Fiji Nails and Spa Salon), Count 8 (attempted robbery of A.H.), and Count 10 (felon in possession of a firearm). The jury acquitted the defendant of the remaining charges.

With respect to the offenses of conviction relevant here, the facts introduced at trial showed that the defendant conspired with Tyreek Byrd, Sahir McCorkle, and Willie Singletary to commit a series of robberies. As part of this conspiracy, on December 31, 2019, the defendant, Byrd, and McCorkle committed a violent home invasion robbery at the Fiji Nails and Spa Salon.

3

Prior to the robbery, the defendant had placed a GPS tracking device on T.D.'s car, researched the salon, and conducted surveillance. During this robbery, the men zip-tied K.N. and T.D. and their children, threatened to kill them with the pistols that each man carried, beat T.D., and threatened to drown his three-year old daughter. Ultimately, the men stole thousands of dollars before fleeing.

Four days later, the defendant and another man attempted to commit a home invasion robbery at the home of A.H., a business owner. As with the Fiji robbery, and as part of the conspiracy, the defendant had placed a GPS tracker on A.H.'s car to track him from his business to his home in Uwchlan Township. The defendant and McCorkle conducted surveillance on the victim's home and the defendant spoke regularly with Singletary in recorded prison calls. During those calls, which were played at trial, Singletary and the defendant discussed in great detail how the defendant would perpetuate the home invasion and the plan for the crime. *See* Gov't Ex.'s 908-13; 915-17. When the defendant arrived at A.H.'s home on the morning of January 3, 2020, he was captured on home surveillance cameras attempting to break into the house. He was ultimately arrested in woods abutting the property while possessing a .40 caliber Smith and Wesson handgun that had been manufactured in Massachusetts.

The defendant has now moved for judgment of acquittal on Counts 1, 7, 8, and 10[1] pursuant to Federal Rules of Criminal Procedure 29 and 33. For the reasons explained below, his motion should be denied.

---

[1] The defendant's motion also states that he is moving for judgment of acquittal on Count 6, but he offers no argument in support.

# I.     STANDARD OF REVIEW

### a.   Rule 29

Federal Rule of Criminal Procedure 29 provides, in pertinent part: "[t]he court on the defendant's motion must enter a judgement of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a). This motion may be made after the jury has reached a verdict of guilty. Fed.R.Crim.P. 29(c). "The sole foundation upon which a judgment of acquittal should be based is a successful challenge to the sufficiency of the government's evidence." *United States v. Carter*, 966 F.Supp. 336, 340 (E.D.Pa. 1997) (*citing United States v. Frumento*, 426 F.Supp. 797, 802 n.5 (E.D.Pa. 1976), aff'd, 563 F.2d 1083 (3d Cir. 1977); *see also* 2A Charles Alan Wright, Federal Practice and Procedure § 466 (3d ed. 2000) ("There is only one ground for a motion for a judgment of acquittal. This is that the evidence is insufficient to sustain a conviction of one or more of the offenses charged in the indictment or information." (internal quotation omitted)).

In ruling on a Rule 29 motion, the district court must determine whether any rational trier of fact could have found proof of the defendant's guilt beyond a reasonable doubt based upon the available evidence presented at trial. *United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2002) (*citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In making its determination, the trial court must view the evidence as a whole, and in the light most favorable to the government. *United States v. Hoffecker*, 530 F.3d 137, 146 (3d Cir. 2008). The government is further entitled to "the benefit of inferences that may be drawn from the evidence[,] and the evidence may be considered probative even if it is circumstantial." *United States v. Patrick*, 985 F. Supp. 543, 548 (E.D. Pa.1997) (citing *United States v. Pecora*, 798 F.2d 614, 618 (3d Cir. 1986)); *see also United States v. Griffith*, 17 F.3d 865, 872 (3d Cir. 1994).

The question is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (emphasis in original). The United States Court of Appeals for the Third Circuit has cautioned that the district court "be ever vigilant in the context of ... [a Rule 29 motion] not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc), quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). A Court must, ". . . not to act as a thirteenth juror. Instead, the jury's verdict must be assessed from the perspective of a reasonable juror, and the verdict must be upheld as long as it does not 'fall below the threshold of bare rationality.'" *Caraballo-Rodriguez*, 726 F.3d at 431, quoting *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). *See also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) ("A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."). Under the ordinary standard of review, "[u]nless the jury's conclusion is irrational, it must be upheld." *Caraballo-Rodriguez*, 726 F.3d at 431.

The proponent of a Rule 29 motion, therefore, "bears a heavy burden" to prove the evidence presented by the government during trial was insufficient to support the verdict. *United States v. John-Baptiste*, 747 F.3d 186, 201 (3d Cir. 2014), quoting *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1999). *See also United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990). In fact, the Third Circuit has held that acquittal should "be confined to cases where the prosecution's failure is clear." *Smith*, 294 F.3d at 477 quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir.1984). "The evidence need not unequivocally point to the defendant's guilt as

long as it permits the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Pungitore*, 910 F.2d 1084, 1129 (3d Cir.1990).

Accordingly, "[a] verdict will be overruled only if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987) (quoting *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983)); *see also United States v. Richardson*, 658 F.3d 333, 337 (3d Cir. 2011); *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009); *United States v. Salmon*, 944 F.2d 1106, 1113 (3d Cir. 1991).

### b. Rule 33

Pursuant to Federal Rule of Criminal Procedure 33, a court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Fed.R.Crim.P. 33(a). The Third Circuit has stated, "even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted.'" *United States v. Silveus*, 542 F.3d 993, 1004-05 (3d Cir. 2008) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)). Where multiple errors are alleged, a new trial may be granted only where the errors, "'"when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'" *United States v. Canalichio*, 952 F.Supp.2d 763, 766 (E.D.Pa. 2013) (citing *United States v. Hoffecker*, 530 F.3d 137, 168 (3d Cir.2008) (quoting *United States v. Copple*, 24 F.3d 535, 547 n. 17 (3d Cir.1994))). Consequently, harmless errors that do not deprive the defendant of a fair trial are not a basis for granting a defendant's Rule 33 motion. *See Copple*, 24 F.3d at 547.  Although this standard is broader than the standard for acquittal under Rule 29, motions for a new trial are disfavored and "only granted

with great caution and at the discretion of the trial court." *United States v. Martinez,* 69 F.

App'x. 513, 516 (3d Cir. 2003). Because the verdict against the defendant is presumed valid, the

defendant bears a "heavy burden" to demonstrate that a new trial ought to be granted. *United*

*States v. Cimera,* 459 F.3d 452, 458 (3d Cir. 2006); *see also United States v. Martin*, No. 98-

1782012 WL 3089701 at *2 (E.D. Pa. July 30, 2012). The district court will grant a new trial

only if a defendant bears the burden of proving: (1) that error occurred at trial, and (2) that error

had a substantial influence on the verdict. *United States v. Carter*, 2009 WL 2928905, at *1

(E.D. Pa. Sept. 11, 2009) (citing *United States v. Fumo,* 2009 WL 1688482, at *2 (E.D. Pa. June

17, 2009).

## II. ARGUMENT

### A. The defendant is not entitled to judgment of acquittal for his conviction for conspiracy to commit Hobbs Act robbery.

The defendant's motion for acquittal on Count One of the Second Superseding

Indictment should be denied because it is legally and factually incorrect. He argues that there

was insufficient evidence to support a conviction for conspiracy to commit Hobbs Act robbery

because Count One charged the defendant with conspiring with co-defendants Byrd and

McCorkle and, according to him, the evidence did not prove that the defendant conspired with

them to commit the attempted home invasion in Uwchlan Township. Under his formulation, the

government was required to prove that the defendant conspired with one of the charged

codefendants to sustain a conviction on Count One. *See* Def. Mot., 3 ("Regardless of the fact that

an overt act is not an element of conspiracy in the Third Circuit, *see infra*, the jury's conviction

of Defendant Brown on Count 1 cannot have been supported by evidence regarding William [*sic*]

Singletary and the Uwchlan Township attempted robbery ("Uwchlan Attempt") because the

[second superseding indictment] charges the Uwchlan Attempt as having been an overt act in

furtherance of the only conspiracy charged: that of the alleged conspiracy between Defendant, McCorckle [*sic*], and Byrd."). He further argues that there was no evidence at trial that the defendant conspired with McCorkle or Byrd to commit the attempted robbery at Uwchlan Township. This argument fails for three reasons.

First, the defendant's claim fails from its inception because the government did not need to prove any overt act to sustain a conviction for conspiracy to commit Hobbs Act robbery, let alone a specific overt act pertaining to a specific substantive offense. *See United States v. Pressler*, 256 F.3d 144, 149 (3d Cir. 2001) ("The Government needed to show only that [the defendant] conspired with someone—anyone."). To obtain a conviction for conspiracy to commit Hobbs Act robbery, the government must prove beyond a reasonable that doubt that: 1) two or more persons agreed to commit robbery which interferes with interstate commerce; 2) the defendant was a party to or member of that agreement; and 3) the defendant joined the agreement or conspiracy knowing of its objective to commit robbery which interferes with interstate commerce and intending to join together with at least one other alleged conspirator to achieve that objective. Third Circuit Model Criminal Jury Instruction, No. 6.18.371A (2018); *accord United States v. Salhuddin*, 765 F.3d 329, 340 (3d Cir. 2014). The Hobbs Act robbery statute "plainly indicates that an overt act is not required for Hobbs Act conspiracy." *Id.* And the Third Circuit requires no such proof to sustain a conviction. *Id.* ("We conclude that proof of an overt act is not required for conviction of Hobbs Act conspiracy under 18 U.S.C. § 1951a.").

The defendant concedes as much, acknowledging that "an overt act is not an element of conspiracy in the Third Circuit." Def. Mot., 3. Nevertheless, the defendant seems to assert that not only was the government required to prove that an overt act of the conspiracy, but also that the overt act must relate to the attempted Hobbs Act robbery of A.H. in Uwchlan Township.

There is no basis in law for this argument, and the defendant cites none to support his claim. In short, no judgment of acquittal should be granted based on the government's purported failure to prove an overt, where no such proof was required to sustain the conviction. *Salhuddin*, 765 at 340.

The defendant's argument also fails because he incorrectly narrows the scope of the conspiracy charged in Count One of the Second Superseding Indictment. The indictment not only alleges that Brown, McCorkle, and Byrd were members of the conspiracy to commit robberies, but also that Person #1 was a memeber. Second Superseding Indictment, 3 (stating that Brown, McCorkle, Byrd, *and Person #1* conspired and agreed to commit robbery). Person #1 is Willie Singletary. Accordingly, the defendant's assertion that he was "not indicted for any alleged conspiracy with William Singletary" is simply false. Def. Mot., 4. That is exactly what he was indicted for, and exactly what the government proved at trial.

Specifically, the government introduced nine recorded phone calls between the defendant and Singletary during which the pair discussed in detail the plans for committing the robbery. This included placing a tracker on A.H.'s car while he was at work and locating A.H.'s residence once the tracker returned to his house. *See* Gov't Ex.'s 908, 910.  The defendant and Singletary further discussed being violent—or "grimy"—during the home invasion in order to locate money that A.H. allegedly kept in his house as profits from his property rental business. *See* Gov't Ex. 909, 911, 912. The defendant and Singletary discussed in detail both how and when to commit the robbery of A.H. This was plainly sufficient evidence to demonstrate a conspiracy.

In any event, the defendant's claim also fails because it miscasts the evidence introduced at trial. He claims there was no evidence that he conspired with either McCorkle or Byrd to commit the attempted robbery in Uwchlan Township.  Def. Mot., 4.  Again, the government was

under no obligation to prove any specific overt act with respect to the attempted robbery of A.H., but the record plainly shows that both McCorkle and Byrd were part of the conspiracy and assisted with the planning for this crime. McCorkle testified that he drove with defendant Brown to the area of Uwchlan township—the area where the defendant was "going to rob" and where ultimately "he got arrested"—and that the pair were trying to locate a GPS tracker. Trial Tr., 4/10/24 at 94-95. McCorkle further testified that the GPS tracker was providing Brown with a correct address. *Id.* at 95. This testimony was reinforced by a prison call played between the defendant and Singletary, in which the defendant told Singletary that he "and Zah,[2] we out here right now" but that they were unable to locate the tracker. Gov't Ex. 910.

Similarly, the recorded prison calls show that the defendant had conspired with Byrd to place the tracker on A.H's car. Specifically, a recorded call from December 30, 2019, between Brown and Singletary showed that the defendant and Byrd had attempted to place a GPS tracker on A.H.'s car the previous day, but were unable to do so. Gov't Ex. 908. In that call, the defendant and Singletary's paramour informed Singletary that "Tip"—a nickname for Byrd— had called Singletary because they were trying to place a GPS tracker on the car but could not find it. *Id.*; Trial Tr. 4/10/2024 at 25. This evidence belies the defendant's claim that there was no evidence at trial implicating his charged codefendants.

In sum, the defendant's first argument for setting aside his conviction for conspiracy to commit Hobbs Act robbery should be denied. The government proved that the defendant conspired with Singletary and McCorkle to commit Hobbs Act robbery. His counterarguments either misapprehend the nature of the indictment, which plainly charged the defendant with

---

[2] "Zah" was a nickname for Sahir McCorkle. Trial Tr., 4/10/24 at 10.

conspiring with Singletary, identified as Person #1, or ignores evidence introduced at trial. Accordingly, this claim fails.

### B. The defendant is not entitled to a new trial on Count 1 because the erroneous jury instruction did not prejudice him.

The defendant's second claim with respect to the Count One should also be denied. He argues that an erroneous instruction to the jury stating that they must find an overt act to convict him of conspiracy to commit robbery entitles him a new trial. This claim fails because he cannot show that he was prejudiced by the instruction.

As discussed above, conspiracy to commit Hobbs Act robbery does not require proof of any overt act. Nevertheless, the government inadvertently and incorrectly submitted a proposed jury instructions requesting that the jury be instructed that they must unanimously agree on an overt act that was committed in furtherance of the conspiracy in order for them to convict on Count 1, conspiracy to commit Hobbs Act robbery. ECF 249, p. 36. The defendant submitted a similar request for an instruction regarding overt acts. ECF 271, p. 32. During the charge conference, neither government nor defense counsel objected to the inclusion of the instruction, and it was given in the charge to the jury. Trial Tr., 4/12/2024 at 131. After the jury retired, the parties discussed sending a list of overt acts for the jury to review during deliberation, Trial Tr., 4/12/2024 at 171-79; before ultimately agreeing that there was no need to address the issue. *Id.* 184-85.

The government agrees that the instruction was erroneous and should not have been given. As discussed above, it is well settled in the Third Circuit that conspiracy to commit Hobbs Act robbery does not require proof of an overt act. *Salhuddin*, 765 at 340; *see also,* Third Circuit Model Criminal Jury Instruction, No. 6.18.371A (2018), Comment. The government further

agrees that plain error is the appropriate standard of review, because neither party objected to the instruction before it was given. *United States v. Hughes*, 117 F. 4th 104, 107 (3d Cir. 2024).

Under plain error review, a defendant may only obtain a new trial based on an erroneous jury instruction where he demonstrates 1) that the court erred; 2) that the error is obvious; 3) that it affected the outcome of the district court proceedings, and 4) that it seriously affected the fairness, integrity or public reputation of those proceedings. *Id.* The "plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young*, 470 U.S. 1, 15 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)). The defendant's claim fails on the third and fourth prongs of the test.

The defendant's argument fails because he cannot demonstrate prejudice. That is, he cannot prove that the outcome of the proceedings would have been different if the correct instruction was given. A defendant is not prejudiced by an erroneous jury instruction if "it is highly probable that the error did not contribute to the judgment." *Id.* at 108 (quoting *United States v. Greenspan*, 923 F.3d 138, 149 (3d Cir. 2019)). This "requires a record-intensive factual inquiry," in which the Court examines the record "to figure out why the jury convicted and whether different instructions would have changed its mind." *Id.*

As an initial matter, the defendant fails to explain how an instruction that required the jury to unanimously agree on an *additional* element of the crime that the government was not, in fact, required to prove, was prejudicial to him. The inverse is certainly true—an erroneous jury instruction that *removes* an element of the crime ordinarily constitutes plain error because due process requires a jury find proof beyond a reasonable doubt of every fact necessary to constitute the charged crime. *United States v. Haywood*, 363 F.3d 200, 207 (3d Cir. 2004). But here, if the

erroneous instruction had any impact on jury deliberations than it was to the defendant's benefit because the jury was required to find an additional element of the crime that was not otherwise legally required.

The defendant hardly resists this conclusion. Instead, he claims that the Court's instruction prejudiced him because the overt act instruction included the following admonition:

> The government must prove beyond a reasonable doubt that during the existence of the conspiracy, at least one member of the conspiracy performed at least one of the overt acts described in the indictment for the purpose of furthering or helping to achieve the objective of the conspiracy. The indictment alleges certain overt acts. The government does not have to prove that all of these acts were committed or that any of these acts were themselves illegal. *Also, the government does not have to prove that Mr. Brown personally committed any of the overt acts.*

Trial Tr., 4/12/2024 at 136. He alleges that this instruction potentially allowed the jury to convict the defendant without finding that he committed an overt act at all. But that is not prejudice. That is a correct statement of the law. A correct formulation of the jury instructions would have been entirely silent on the concept of overt acts, because such acts are not elements of a conspiracy to commit Hobbs Act robbery. *Salhuddin*, 765 at 340; *see also,* Third Circuit Model Criminal Jury Instruction, No. 6.18.371A (2018), Comment (stating "It should be noted that a Hobbs Act conspiracy does not require proof of an overt act.").

In any event, a review of the record shows that there was overwhelming evidence that the defendant committed these crimes as part of a conspiracy. The government's cooperating witness, Sahir McCorkle, explained in detail how he committed robberies with the defendant. Trial Tr., 4/10/2024 at 23, 35-40. He explained that the defendant was "the leader" of the group, selected victims to rob, and communicated that information to himself, Singletary, and Byrd. *Id.* at 36-37. The defendant instructed the group what supplies to bring—including zip ties and

firearms—and where to meet prior to committing or attempting to commit the robbery. *Id.* at 40. Aside from the cooperator's testimony, videos introduced at trial of the Fiji Nails and Spa robbery showed that the defendant committed the robbery with other individuals working in concert. *See*, *e.g.*, Gov't Ex's 413-19. This evidence of concerted action was also sufficient to prove conspiracy. *See Pressler*, 256 F.3d at 149 (stating that the existence of a conspiracy "can be inferred from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants ... could not have been carried on except as the result of a preconceived scheme or common understanding'" (quoting *United States v. Kapp*, 781 F.2d 1008, 1010 (3d Cir 1986)). Finally, the government also introduced evidence of communications between the defendant and Byrd, McCorkle, and Singletary showing coordination before the robberies. Gov't Ex.'s 918-20.

The record in this case was replete with evidence that the defendant operated as part of a conspiracy. Accordingly, "in light of the evidence presented at trial," the erroneous jury instruction could have had no "prejudicial impact on the jury's deliberations, so that it produced a miscarriage of justice." *United States v. Haywood*, 363 F.3d 200, 207 (3d Cir. 2004) (quoting *United States v. Xavier,* 2 F.3d 1281, 1287 (3d Cir.1993) (citations and internal quotations omitted)).

Finally, and apart from the failings described above, the defendant's argument should be barred under the invited error doctrine. Under the invited error doctrine, "[a] defendant cannot complain on appeal of alleged errors invited or induced by himself." *Untied States v. Maury*, 695 F.3d 227 (3d Cir. 2012) (quoting *United States v. Console*, 13 F. 3d 641, 660 (3d Cir 1993)). In the context of jury instructions, "where a defendant makes a request in favor of certain instructions, he waives the right to complain of error in such instructions on appeal." *Id.* (quoting

*United States v. Andrews*, 681 F.3d 509, 517 n.4 (3d Cir. 2012)). That is exactly what the defendant is doing here.

The defendant requested that the jury be instructed that they must unanimously find that one of the members of the conspiracy committed an overt act in order to convict on Count One. ECF 271, p. 32. In fact, the instruction that the Court gave is substantially similar to the instruction that the defendant requested. *Compare id.* at 32, 43 *and* Trial Tr., 4/12/2024 at 136. Because the defendant requested the instruction that he now complains of, his claim should be barred by the invited error doctrine.

### C.   There was sufficient evidence to show that the defendant targeted A.H.'s residence for business proceeds.

The defendant's attempt to invalidate his conviction for attempting to rob A.H.'s home in Uwchlan Township should also be denied because the government introduced sufficient evidence to satisfy the interstate commerce element of Hobbs Act robbery. The Third Circuit has established "a rather low hurdle for the Government in Hobbs Act cases" with respect to proving the interstate commerce element, which is consistent with Supreme Court precedent. *United States v. Shavers*, 693 F.3d 363, 372 (3d Cir. 2012). There is no requirement that the government show that a defendant's criminal activity had a substantial effect on interstate commerce. *Id.* (quoting *United States v. Urban*, 404 F.3d 754, 766 (3d Cir. 2005)). Instead, the element will be satisfied "if the defendants' conduct produces any interference with effect upon interstate commerce, whether slight, subtle, or even potential." *Id.* (quoting *United States v. Haywood*, 363 F.3d 200, 209-10 (3d Cir. 2004)). The Third Circuit's jurisprudence is consistent with the Supreme Court's precedent discussing Congress's power to regulate "purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce." *Id.* (quoting *Gonzales v. Raich*, 545 U.S. 1, 17 (2005)).

One way that the government may satisfy its burden of proving the interstate commerce element of Hobbs Act robbery is through a "targeting" theory. *United States v. Powell*, 693 F.3d 398, 403–05 (3d Cir. 2012). There, evidence that defendants committed a robbery to steal proceeds of a business engaged in interstate commerce satisfies the interstate commerce element of Hobbs Act robbery. *Id.* at 404. Such robberies are "directed at a business establishment" even though they occur "outside the confines of the victims' stores." *Id.*

In *Powell*, the defendants followed business owners to their houses and then robbed them because the defendants believed that the victims did not use banks. The Third Circuit held that government had satisfied the interstate commerce element of Hobbs Act robbery because the evidence "established that Powell and his accomplices deliberately selected store owners as the victims, seeking to steal the stores' earnings and assets." *Id.* at 403. The Court reasoned that such "targeting and the resultant robberies of those owners were sufficient for a rational jury to conclude beyond a reasonable doubt that the 'natural consequences' of Powell's actions were an actual or potential effect on interstate commerce." *Id.* at 405; *accord United States v. Le*, 542 F. App'x 108, 113 (3d Cir. 2013) (not precedential) ("[W]here the evidence establishes that a defendant targeted a residence in order to rob the home of proceeds from a business that engages in interstate commerce, the jurisdictional element of Hobbs Act robbery is satisfied.").

Here, the evidence showed that the defendant and Singletary targeted A.H. specifically because they believed he had money in his house from his rental property business. Singletary encouraged the defendant to rob A.H. by telling him that there was "half a million" dollars in the house for him to steal. Later in that call, he explained that the funds were from A.H.'s business:

> I'm guaranteeing y'all this shit bro this is there because I used to
> work for the nigga dog. We used to count over a dub every day of
> the week Monday, Tuesday, Wednesday, Thursday, Friday,
> Saturday and he got 20 stores bro, he got 20 of them bro.

Gov't Ex. 909. The next day, Singletary reiterated that A.H. was being targeted because he had "like 20 jawns, like my folks could tell you what type of stores they is bro." Gov't Ex. 911. On January 1, 2020, Singletary explained that the timing of the robbery was ideal, because "[o]n the first he there all day. Because this is his . . . big money makers…Today is when he collect all his money, his rent and all that shit." Gov't Ex. 912. This evidence was sufficient to show that the defendant attempted to rob A.H. because of his rental property business.

During the trial, A.H. described his business. He stated that he owned 10 rental properties throughout Philadelphia. Trial Tr. 4/9/2024 at 196. These properties were both commercial and residential. *Id.* at 196-97. The commercial properties included a tax business and a hair salon. *Id.* at 197. At or around the time of the attempted robbery, A.H. stated that he collected rent in various forms, including using internet enabled cell phone applications. *Id.*

This was sufficient to show that the business was engaged in interstate commerce. The rental of real estate is "unquestionably" an activity that affects interstate commerce. *Russell v. United States*, 471 U.S. 858, 862 (1985). In *Russell*, the Supreme Court considered whether the arson of a two-unit apartment building used as a rental property constituted the burning of a property "used in interstate or foreign commerce." *Id.* at 859. The Court—in an eight paragraph opinion—easily found that rental properties affected interstate commerce. *Id.* at 862. The Court required no further evidence to support its conclusion, expressly noting that it "need not rely on the connection between the market for residential units and the interstate movement of people to recognize that the local rental of an apartment unit is merely an element of a much broader commercial market in rental properties." *Id.* (internal citations omitted). Following *Russell*, courts have held that "rental property is *per se* property used in an activity affecting interstate commerce." *United Staes v. Gaydos*, 108 F.3d 505, 509 (3d Cir. 1997) (collecting cases).

Based on this precedent, there can be no doubt that A.H.'s business of renting properties was a business engaged in or affecting interstate commerce. Contrary to the defendant's assertions, no further proof of movement of tenants between states was required to sustain the conviction for attempted Hobbs Act robbery. Similarly, the use of internet enabled applications to collect rent was further evidence that the defendant's business was engaged in interstate commerce. *See, e.g. United States v. Horne*, 474 F.3d 1004, 1006 (7th Cir. 2007) (sustaining a conviction for Hobbs Act robbery where the defendant targeted victims using an online auction site, which the court reasoned was "an avenue of interstate commerce" and further finding that the internet "crosses state and indeed international boundaries" such that the "buy and sell offers communicated over it in [that] case created interstate transactions"); *see also United States v. Clausen*, 328 F.3d 708, 712 (3d Cir. 2003) (finding, in part, that a business was engaged in interstate commerce because it advertised on the internet). As described above A.H. testified that his business involved rental properties and that he used internet based applications to collect rent. The government further elicited testimony that the internet is a global network that may be accessed by cell phones and other computers. Trial Tr. 4/11/2024 at 182.

At bottom, there was sufficient evidence introduced during the trial to show that the defendant and his cohorts targeted a business that engaged in rental properties and used internet applications to collect rent payments. This was sufficient for a rational trier of fact to conclude that the "de minimis impact on interstate commerce" threshold was cleared. *Clausen*, 328 F.3d at 711.

### D. There was sufficient evidence to support the defendant's conviction for possessing a firearm as a convicted felon under 18 U.S.C. § 922(g).

Finally, the defendant moves for judgment of acquittal on Count 10 of the second superseding indictment, charging him with possessing a firearm as a felon. This claim also fails,

as the government's evidence that the firearm the defendant possessed had traveled in interstate commerce was plainly sufficient to support his conviction.

Section 922(g) of the Title 18 of the United States Code prohibits, *inter alia*, any person who has been convicted of a felony from "possessing in or affecting commerce, any firearm or ammunition." *United States v. Singletary*, 268 F.3d 196, 199 (3d Cir. 2001). To obtain a conviction under this statute, the government must prove that 1) the defendant was a convicted felon; 2) the defendant knowingly possessed a firearm; 3) the defendant knew he had previously been convicted of a felony; and 4) the possession was in or affected interstate or foreign commerce. Model Criminal Jury Instruction, No. 6.18.371A (2018); *accord United States v. Adams*, 36 F. 4th 137, 143-44 (3d Cir. 2022).

At trial, Special Agent Michael Orchulli from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") was qualified as an expert in the interstate nexus of firearms. Trial Tr. 4/11/2024 at 8. There was no objection from the defense. *Id.* Agent Orchulli testified that the firearm recovered from the defendant—a .40 caliber Smith and Wesson Model 4043 handgun—was manufactured in Springfield, Massachusetts. *Id.* at 11. Because the firearm was recovered in Pennsylvania, Agent Orchulli opined that the firearm had affected interstate commerce. *Id.* at 12. On cross-examination, he further testified to the self-evident fact that a gun manufactured in Massachusetts and recovered in Pennsylvania traveled in interstate commerce. *Id.* at 13.

This is sufficient evidence to satisfy the interstate commerce element of the felon-in-possession statute. *United States v. Singletary*, 268 F.3d 196, 205 (3d Cir. 2001). There, the Court considered whether recent Commerce Clause jurisprudence had abrogated the Supreme Court's previous holding that the government "only need prove that 'the firearm possessed by the convicted felon traveled at some time in interstate commerce'" to sustain a conviction under

§ 922(g). *Id.* at 200 (quoting *Scarborough v. United States*, 431 U.S. 563, 568 (1977)). *Singletary* concluded that the Supreme Court's holding remained in effect and succinctly concluded "that the proof in this case that the gun had traveled in interstate commerce, at some time in the past, was sufficient to satisfy the interstate commerce element." *Id.* at 205.

*Singletary* is still the law of this Court, and the proof required to sustain a conviction under § 922(g) remains the same. Here, the government proved that the gun recovered from the defendant in Uwchlan Township, Pennsylvania was manufactured in Springfield, Massachusetts. That is sufficient to satisfy the interstate commerce element of the felon-in-possession statute, and the defendant's claim fails.

## III.   <u>CONCLUSION</u>

WHEREFORE, the United States respectfully requests that this Court deny the defendant's motion for judgment of acquittal.

Respectfully submitted,

DAVID METCALF
United States Attorney

<u>/s/ *Anthony J. Carissimi*</u>
ANTHONY J. CARISSIMI
Assistant United States Attorney
J. JEANETTE KANG
Assistant United States Attorney

Date: October 14, 2025

**CERTIFICATE OF SERVICE**

I certify that a copy of the Government's Unopposed Motion for Production of Medical Records and accompanying motion to seal were served upon counsel for the defendant by electronic mail, as follows:

Leigh Skipper
Alessandra Mungioli
*Counsel for Shaquan Brown*

/s/ *Anthony J. Carissimi*
ANTHONY J. CARISSIMI
Assistant United States Attorney

Date: October 15, 2025